**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JOSEPH M. CARPINO, | Case No.: 3:18-cv-00506-MMD-WGC |
| Plaintiff | **Order** |
| v. | Re: ECF Nos. 15, 16 |
| DR. MARTIN NAUGHTON, et. al. | |
| Defendants | |

Plaintiff filed a proposed first amended complaint (FAC). (ECF No. 15.) Defendants moved to strike the portion of the FAC that purports to incorporate all facts and statements set forth in the original complaint. (ECF No. 16.) For the reasons set forth below, the motion to strike is granted, and the court has screened the proposed FAC and Plaintiff is permitted to proceed with the Eighth Amendment claims asserted in the FAC.

## I. MOTION TO STRIKE

Federal Rule of Civil Procedure 12(f) provides authority for the court to strike "redundant, immaterial, impertinent, or scandalous matter" from a pleading.

At the end of each of the two counts of the FAC, Plaintiff includes a statement that he is incorporating all facts and statements set forth in the original complaint. The Local Rules provide, however, that a proposed amended pleading "must be complete in and of itself without reference to the superseded pleading[.]" LR 15-1(a).

After Defendants filed their motion to strike, the court reviewed the proposed FAC and it did not appear that there were allegations from the original complaint that were not contained within the FAC. Therefore, the court ordered Plaintiff to file a notice with the court indicating

whether there were any allegations or statements from the original complaint that do not appear in the FAC that Plaintiff wishes to be a part of the FAC. (ECF No. 17.) Plaintiff filed a notice indicating that the FAC was complete in and of itself. (ECF No. 20.)

Therefore, Defendants' motion to strike these statements from Plaintiff's FAC is granted.

## II. SCREENING

### A. Standard

Under the statute governing IFP proceedings, "the court shall dismiss the case at any time if the court determines that-- (A) the allegation of poverty is untrue; or (B) the action or appeal-- (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(A), (B)(i)-(iii).

In addition, under 28 U.S.C. § 1915A, "[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). In conducting this review, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) track that language. As such, when reviewing the adequacy of a complaint under these statutes, the court applies the same standard as is applied under Rule 12(b)(6). *See e.g. Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Review under

2

Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000) (citation omitted).

The court must accept as true the allegations, construe the pleadings in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Allegations in pro se complaints are "held to less stringent standards than formal pleadings drafted by lawyers[.]" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (internal quotation marks and citation omitted).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action," it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more … than … a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (citation and quotation marks omitted). At a minimum, a plaintiff should include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A dismissal should not be without leave to amend unless it is clear from the face of the complaint that the action is frivolous and could not be amended to state a federal claim, or the district court lacks subject matter jurisdiction over the action. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *O'Loughlin v. Doe*, 920 F.2d 614, 616 (9th Cir. 1990).

**B. Plaintiff's FAC**

Plaintiff's FAC names defendants Dr. Martin Naughton, Dr. Dana Marks, Dr. Marsha Johns and Nurse Melissa Mitchell.

**1. Count 1**

In Count 1, similar to the original complaint, Plaintiff alleges that Defendants knew of his serious medical issues with respect to his neck and back but denied or unreasonably delayed treatment, causing him to suffer in pain.

He was sent to NNCC for possible hip surgery and treatment of his back problems on June 11, 2015. His neck issues started in December of 2015. He submitted a kite in January of February of 2016. He saw Dr. Gedney (not a defendant), and she ordered x-rays. The x-rays showed that the C-5 to C-6 vertebrae were pressing on a nerve and causing his neck pain and numbness in his hands and arms. He saw Dr. Marks on April 11, 2016, to go over the results of the x-ray, but Dr. Marks would not tell him the results and said that Plaintiff's neck could not be the cause of the numbness in his hands and arms and that he would make an appointment for Plaintiff to be seen by an orthopedist—Dr. Long—for his neck and back problems. He saw Dr. Long on May 25, 2016, who said that the C-5 and C-6 vertebrae were pressing on a nerve, but it was not bad, and he would see Plaintiff again in four to five months. He saw Dr. Long again on October 26, 2016, and discussed his neck, back and hip problems. Dr. Long compared his back to "shredded wheat," but said NDOC would not do anything about it at this time.

He saw Dr. Johns on December 15, 2016, and she looked at his neck and heart, and ordered a CT scan of the neck and a long acting nitro for the heart. The CT scan was done on March 16, 2017. On June 14, 2017, he saw Dr. Naughton to get the results of the CT scan, but was told he would have to see Dr. Long for the results. He did not see Dr. Long until

September 13, 2017, and Dr. Long said little about the results, and nothing about treatment. On October 19, 2019, he saw Nurse Practitioner Villegas and was told the results of the CT scan: C-2 had bone spurs; C-3, C-4, and C-5 were collapsed; and C-7 had narrowing of the nerve canal; and the arteries in the neck had blockage.

He saw Dr. Johns on April 18, 2018 about his ongoing medical problems. She said that Dr. Long had looked at the results and put in for an appointment to see Dr. Dante Vacca, a neurosurgeon, regarding surgery for the neck. An MRI was performed on March 13, 2018.

He saw Dr. Vacca on May 11, 2018. He recommended surgery to fuse the neck from C-3 to C-7. He reported that this would help with the pain, but because of the amount of time that had passed, the numbness in the hands and arms would remain the same.

He saw Dr. Chryssos on May 31, 2018, to be cleared for neck surgery. He would not clear Plaintiff because stents had to be placed first. Plaintiff told Dr. Chryssos that this should have been done a long time ago. On July 19, 2018, he went to have the stents placed but the doctor that was supposed to do the procedure did not put any stents in and cleared Plaintiff for surgery.

Plaintiff saw Dr. Naughton on August 29, 2018, and he told Plaintiff the neck surgery was approved, but he had to see Dr. Chryssos first to be cleared for surgery. He had already seen Dr. Chryssos. Dr. Naughton also discussed his back problems and Plaintiff relayed what he had been told by Dr. Van Horn at Lovelock Correctional Center (LCC). Dr. Naughton looked at Plaintiff's file and returned and said, "you know they are not going to do both of these surgeries at the same time." Plaintiff alleges that he has complained of pain all this time, and has not received any treatment.

On September 26, 2018, he was called to see Nurse Mitchell. She told Plaintiff she was not blowing him off but his paperwork had fallen through the cracks, and Plaintiff had been cleared for surgery since July 19, 2018, and a copy of the report had been forwarded to Dr. Vacca to set up the surgery. Plaintiff did not have the surgery until February 14, 2019, and he is left with permanent numbness in his arms and hands.

Plaintiff states a colorable Eighth Amendment deliberate indifference claim in Count 1. He alleges that he was transferred to NNCC for his back and hip issues in 2015, and began to complain of neck pain shortly thereafter. Despite significant radiological findings, and complaints of pain, he did not receive his neck surgery until February of 2019, and apparently has still not received treatment for his back.

**2. Count 2**

In Count 2, Plaintiff alleges that there was an unreasonable delay in treating his pain in his right side.

On September 13, 2016, he sent a kite requesting to be seen for pain in his right side and blood in his bowel movement. He saw a nurse regarding this issue on September 21, 2016. She took a urine sample, and told Plaintiff it was fine and that he should kite again if the problem continued.

He sent another kite about the pain on his right side and blood in his bowel movement on October 2, 2016. He saw Dr. Marks on October 17, 2016. Dr. Marks ordered lab tests. He saw Dr. Johns on December 15, 2016, and she ordered tests for the pain in his side.

On March 30, 2017, Plaintiff had a telemedicine conference with Dr. Allison W. Venner, and she said a colonoscopy would be done after a stress test was done by the heart doctor. Dr. Chryssos ordered an angiogram instead of a stress test, and this was completed on

June 4, 2017.

On September 13, 2017, he talked with Nurse Mitchell, who handles outside appointments. She told Plaintiff he would have to go to HDSP to have the colonoscopy done. Plaintiff filed a grievance regarding the delay and lack of medical care.

On September 25, 2017, Plaintiff was called to sign a refusal about going to HDSP for the colonoscopy. Dr. Naughton told the nurse that the colonoscopy would be done from NNCC in a month.

On December 28, 2018, the colonoscopy was done by Dr. Venner. The results showed diverticulosis on the left side. On February 14, 2018, Nurse Villegas went over the results and treatment required and ordered two types of antibiotics. After the treatment for the diverticulosis on the left side of the colon, Plaintiff continued to complain about pain in the right side and blood in his bowel movements. He alleges that medical staff, including Dr. Johns, Dr. Naughton and Nurse Mitchell, stated the pain was from the diverticulosis. On July 24, 2019, Plaintiff was taken to the Carson Tahoe Hospital emergency room for severe pain in his right side, and a CT scan showed fecal wall thickening and inflammation in the lateral aspect of the cecum. An endoscopy was recommended.

On December 19, 2019, a colonoscopy was performed which showed the colon was clear. The CT showed there was something in the cecum, not the colon, and an endoscopy was recommended. On December 27, 2019, he was taken for an upper GI scope with Dr. Harvey. The results showed a large mass in the cecum, and it was recommended that he be evaluated for possible surgery.

Plaintiff may also proceed with his Eighth Amendment deliberate indifference claim against the Defendants in Count 2. Plaintiff alleges that from the time he had his first

colonoscopy, he continued to complain of pain in his right side. He was continually told by the Defendants that the pain was from the diverticulosis on the left side of the colon. He avers that the defendants never ordered any test to find out the source of the pain. He kept complaining until he was in so much pain he had to be taken to the emergency room.

### III. CONCLUSION

(1) Defendants' motion to strike (ECF No. 16) is **GRANTED**. The following language is stricken from the FAC: "Plaintiff hereby incorporates all facts and statements set forth in the Original Complaint." (ECF No. 15 at 6, 8.)

(2) Plaintiff's FAC may proceed with the Eighth Amendment deliberate indifference to serious medical needs claims in Counts 1 and 2 against Dr. Martin Naughton, Dr. Dana Marks, Dr. Marsha Johns, and Nurse Melissa Mitchell.

(3) Within **21 days** of the date of this Order, the Attorney General's Office shall file a notice indicating to the court and Plaintiff whether it will accept service on behalf of the Defendants. If there are defendants for which service is not accepted, the Attorney General's Office is directed to file the last known address of each such defendant under seal. If the last known address is a post office box, the Attorney General's Office shall attempt to obtain and provide the last known physical address.

(4) If service cannot be accepted for any of the named defendant(s), Plaintiff shall file a motion identifying the unserved defendant(s), requesting issuance of a summons, and specifying a full name and address for the defendant(s) (if it has not been provided under seal). If the Attorney General's Office does not have a last known address for any defendant, then Plaintiff must provide the full name and address for service on such defendant.

(5) If the Attorney General's Office accepts service for any defendant, an answer or other responsive pleading shall be filed within 21 days of the date that service is accepted. Once an answer or other responsive pleading is filed, the court will issue a scheduling order.

(6) Plaintiff is reminded that under Federal Rule of Civil Procedure 4(m), service must be completed within **90 days** of the date of this Order. If Plaintiff requires additional time to meet any of the deadlines set by the court, he must file a motion for extension of time under Local Rule 1A 6-1 and Local Rule 26-4 that is supported by a showing of good cause. A motion filed after a deadline set by the court or applicable rules will be denied absent a showing of excusable neglect.

(7) Once a defendant is served, Plaintiff must serve a copy of every pleading or other document submitted for consideration by the court upon the defendant or, if an appearance has been entered by counsel, upon the attorney. Plaintiff must include with the original of each document to be filed with the court a certificate stating that a true and correct copy of the document was served on the defendant, or counsel, if the defendant has an attorney. Under Local Rule 5-1 the proof of service must show the day and manner of service and the name of the person served. The court may disregard any paper received which has not been filed with the Clerk, or that fails to include a certificate of service.

**IT IS SO ORDERED**.

Dated: April 17, 2020

*William G. Cobb*
William G. Cobb
United States Magistrate Judge